UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:26-cr-00047-CHB-EBA |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDY MEADOWS, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Edward B. Atkins. [R. 37]. The Report and Recommendation addresses Defendant Brandy Meadows's Motion to Suppress, [R. 28], in which Meadows seeks suppression of evidence and statements made during the execution of a warrant. Magistrate Judge Atkins recommended that Meadows's motion be denied. [R. 37]. Meadows filed objections to the Report and Recommendation. [R. 47]. The United States responded to those objections, [R. 48]. For the reasons stated herein, Meadows's Motion to Suppress is denied, and the evidence is ordered admitted.

## I. BACKGROUND

This case arises from an investigation into Kentucky Mountain Health, LLC, an Eastern Kentucky health care provider within Pike County, Kentucky. [R. 37, p. 1]; [R. 1, pp. 1–3]. Detective Justin Cooley, from the Kentucky Office of the Attorney General ("KOAG"), requested a search warrant for Kentucky Mountain Health, LLC after investigating and finding probable cause that "[Mountain Health], Brandy Meadows, and Bryce May were charging cash for Medicaid

covered services to Medicaid enrolled beneficiaries" and the potential existence of a "kickback" scheme where providers tested patients without medical necessity. [R. 37, p. 1]; [R. 30, p. 4].

On June 10, 2024, the search warrant was granted by Pike District Court Judge Tommy May. [R. 28-1, p. 3 (Search Warrant)]. The search warrant "expressly incorporated Cooley's affidavit by reference" and authorized the search of the Kentucky Mountain Health premises and the seizure of the following items:

> Complete patient files of persons listed in **Attachment Number One and Attachment Number Two**, any and all books, records, documents, papers, memoranda, notes and correspondences relating to the treatment of patients required by law or contract to be kept or maintained, specifically including but not limited to: patient files of Medicaid patients, all original billing records, any and all books, coding documentation, Current Procedural Terminology ("CPT") manual(s), code books, documentation regarding coding, records, documents, papers, memoranda, notes and correspondences that tend to show knowledge and/or intent to submit fraudulent claims to the Kentucky Medical Assistance program (Medicaid). Cash and receipt books indicating cash payments made by patients. Record books or other account recording methods, which indicates patients receiving a credit charge account.
>
> Banking records, financial documents, which shows payments being made to or from individuals who are employed or contracted through Kentucky Mountain Health, LLC; documents which how a contract or relationship between Brandy Meadows, George Morgan and Bryce May. Any and all documents which show kickbacks have been given or received between Brandy Meadows/ Kentucky Mountain Health and any other party.
>
> Computers, central processing units, computer motherboards, printed circuit boards, processor chips, all data drives, hard drives, floppy discs, optical drives, tape drives, digital audio drives, and/or any other internal or external storage devices such as magnetic tapes and/or discs;
>
> Any terminal and/or video display units and/or receiving and/or peripheral equipment such as, but not limited to printers, digital scanning equipment, automatic dialers, modems, acoustic couplers, and/or direct line couplers, peripheral interface boards and connecting cables and/or ribbons;
>
> Any computer software, programs, and accounting/billing software or programs along with all operational documentation relating to these programs operated by any employee with **FULL ACCESS**, passwords, product keys or any other pass codes necessary to open same, computer logs, diaries, magnetic audio tapes, and

receivers, digital audio discs and/or records, any memory devices such as, but not limited to, memory modules, contents of computers, memory chips and any other form of memory device utilized by the computer or peripheral device;

Any documentation and/or notations referring to the computer, contents of the computer, the use of the computer or any computer software and/or communications. All information within above listed items including but not limited to machine readable data, all previously erased data, and any personal communications including, but not limited to email, chat capture, capture files, social media data/correspondence, correspondence stored in electronic form, and/or correspondence exchanged in electronic form;

Any network or workstation personal user or account names (including **ADMINISTRATOR** or **FULL ACCESS** accounts and password) along with valid password(s) for those accounts whether they be for network, workstation, or any operational software installed on any of the computers or digital storage devices that may require a login/password before the software will operate;

All of the above records, whether stored on paper, on magnetic media such as tape, cassette, cartridge, disk, diskette or any memory storage devices such as optical disks, programmable instruments such as telephones, “electronic address books", Personal Digital Assistants (PDA), calculators, tablets, digital voice recorders, and/or any other storage media, together with indicia of use, ownership, possession, or control of such records relating to the treatment of patients, billing for services rendered, Cash payment for treatment, claims and any other services claimed to be provided by any agent, associate, employee of Kentucky Mountain Health, LL.C.

The affiant requests to seize any and all electronic storage devices, internal or external, including but not limited to: the computer systems(s); all related computer peripherals; all electronic storage devices, “sim cards”, “sd cards”; all software, necessary documents or papers for utilization of these devices, all media; and transfer it to an off-site controlled location where the "mirror image" will be obtained and a forensic examination of said image will be performed for the purpose of locating the items described herein. Generally speaking, forensic imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files on a hard drive.

The forensic examiner will be a Detective employed by the Kentucky Office of Attorney General, Cybercrime Unit, who is specifically trained in advanced computer seizures and forensic analysis and who will attempt to create an electronic "image" of those parts of the computer that are likely to store the previously described files. The forensic examiner will at a later date conduct an off-site search of the “mirror image” copy for the previously described files. This method of searching for evidence is the industry-accepted method in that it leaves the original data and computer intact and unaltered. This image has a hash value set identical to the original drive thereby confirming **it** as an identical image.

> The examination of the "mirror image" will focus on locating the computer files previously described. Any files located by way of this search will be archived through the making of an electronic copy. The examination and analysis of located data will focus on particular programs, directories, and files that are most likely to contain evidence and information relative to the violations under investigation. The examining expert will make every effort to review and copy only programs, directories, files and materials that are of the offenses described herein.
>
> Affiant also requests to conduct a RAM Dump of any and all running computers which will be seized.
>
> If, after inspecting the computers, the computer expert determines that any seized item is no longer needed as a part of the forensics effort, the government will return it within a reasonable time.
>
> Cellular phones/Smartphones, external and internal storage devices, including "sim cards" and "sd cards", which will also be examined by a forensic examiner of the Kentucky Office of the Attorney General Cyber Crime Unit. The examination will search for contact lists text messages, multimedia messages, email correspondence, all social media activity, GPS location data, and any and all files which show violations of the crime or crimes under investigation.

*Id.* at 1–2. The search warrant was subsequently executed by the KOAG and Pikeville Police Department at Kentucky Mountain Health on June 11, 2024. [R. 37, p. 4]. Law enforcement officials seized seventeen items, including cash, a prescription token, and several types of business records. [R. 28-2, p. 4 (Search Warrant Return)].

During the execution of the warrant, Meadows was interviewed and recorded by two law enforcement officials. [R. 35, 00:00–1:00:55 (Audio recording of interview)]. Before the officers interviewed Meadows, they explained to her that she was not under arrest, did not have to speak to the officials, and could leave at any time. *Id.* at 00:30–00:45. The officers further advised her of her *Miranda* rights. *Id.* at 00:45–1:10. Meadows confirmed that she understood her rights, waived them, and continued with the interview. *Id.* at 1:12–1:20. The interview lasted for one hour and fifty-five seconds. *See* [R. 35].

Meadows was indicted by a federal grand jury on March 26, 2026, for distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846 and identity theft under 18 U.S.C. § 1028A(a)(1). [R. 1].

On June 26, 2026, Meadows filed a motion to suppress. [R. 28, p. 1]. In the motion, Meadows argued the evidence at issue was obtained in violation of the Fourth Amendment and should be suppressed, as (1) the search warrant was overly broad, *id.* at 3–4, (2) items seized were outside the scope of the warrant, *id.* at 5, and (3) the statements made during her interview with law enforcement officials were involuntary. *Id.* at 6–7. Specifically, Meadows argues all evidence seized under Detective Cooley's search warrant "must be suppressed as fruits of the poisonous tree." *Id.* at 7. The United States filed its response, [R. 36], and Meadows failed to file a reply.

An evidentiary hearing was scheduled for August 5, 2026 before the magistrate judge, but Magistrate Judge Atkins ultimately issued a report and recommendation denying Meadows's motion without an evidentiary hearing. [R. 37]. Meadows responded, [R. 47], making four objections: (1) that the matter should be scheduled for an evidentiary hearing, *id.* at 3–4, (2) that the search warrant was overly broad, *id.* at 4–6, (3) that items outside the scope of the warrant were seized, *id.* at 6–7, and (4) that statements obtained from Meadows were involuntary, *id.* at 8–9. The United States responded to these arguments, [R. 48].

This Court has examined the record, and for the reasons stated below, the Court agrees with Magistrate Judge Atkins's Report and Recommendation, [R. 37]. Accordingly, the Court will adopt Magistrate Judge Atkins's Recommendation as the opinion of this Court, overrule Meadows's objections, and deny her motion to suppress.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to conduct evidentiary hearings and submit proposed findings of fact and recommendations for the disposition of certain motions, including motions to suppress evidence. Within fourteen days of being served a copy of that recommended disposition, any party may file written objections to the magistrate judge's proposed findings and recommendation. 28 U.S.C. § 636(b)(1). This Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)) (internal quotation marks omitted). Courts need not conduct de novo review of general objections that fail to identify specific factual or legal issues, because it duplicates the magistrate judge's efforts and wastes judicial economy. *Howard v. Sec. of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Ultimately, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[A]n objection to a[] [Report and Recommendation] is not meant to be simply a vehicle to rehash arguments set forth in the petition, and the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee v. Univ. Hosps. Corp*, No. 1:19-CV-01141, 2020 WL 511520, at *1 (N.D. Ohio Jan. 31, 2020) (citing *Howard*, 932 F.2d at 509); *see also Roberts v. Warden, Toledo Corr. Inst.*, No. 1:08-CV-00113, 2010 WL 2794246, at *7 (S.D. Ohio July 14,

2010) ("The Court is under no obligation to review de novo objections that are merely perfunctory or an attempt to have the Court reexamine the same arguments set forth in the original petition."); *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *2 (E.D. Mich. Dec. 30, 2019) ("[O]bjections to a report and recommendation should not be used as a vehicle to rehash arguments previously made by the objecting party.").

## III. ANALYSIS

In his Report and Recommendation, Magistrate Judge Atkins denied Meadows's motion to suppress. [R. 37]. Meadows makes four objections: (1) that the matter should have been scheduled for an evidentiary hearing, *id.* at 3–4, (2) that the search warrant was overly broad, *id.* at 4–6, (3) that items outside the scope of the warrant were seized, *id.* at 6–7, and (4) that statements obtained from Meadows were involuntary, *id.* at 8–9. The Court now analyzes each of Meadows's objections in turn. However, because Meadows's first objection—that Magistrate Judge Atkins erred in his decision not to hold an evidentiary hearing—relies in part on her arguments in other objections, the Court will discuss that objection last for the sake of clarity.

### A. The search warrant was not overly broad.

Meadows's second objection contends that the search warrant was overly broad and failed to satisfy the particularity requirement of the Fourth Amendment. [R. 47, pp. 4–5]. The Fourth Amendment of the Constitution requires warrants to "particularly describ[e] the place to be searched and persons or things to be seized." U.S. Const. amend. IV. A valid search warrant must be particular to ensure law enforcement officials do not execute "general search warrants" that "fail to particularly describe the things to be searched for and seized, 'creat[ing] a danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999) (quoting *United States v. Savoca*, 761 F.2d

292, 298–99 (6th Cir. 1985)). However, "[w]hile a 'general order to explore and rummage' is not permitted . . . 'the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought.'" *United States v. Greene*, 250 F.3d 471, 476 (6th Cir. 2001) (quoting *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir.1999)).

Meadows argues in her objection that the search warrant falls short of this particularity requirement. [R. 47, pp. 4–5]. She alleges that the search warrant executed was overly broad and "essentially gave law enforcement the ability to enter Kentucky Mountain Health and seize everything therein, without probable cause for specific items." *Id.* at 5. Meadows emphasizes the Sixth Circuit's disapproval of "broad, unlimited seizure of non-patient file documents in the health care fraud context." *Id*. (citing *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010)). However, the magistrate judge correctly stated that whether the language of the warrant indicated a "general warrant" or was properly broad in scope was determined by the specific situation. [R. 37, p. 7]. As such, in the Sixth Circuit, "general business records" are permitted to be searched in a "business fraud case." *Abboud*, 438 F.3d at 575. Here, the investigation was into Meadows's workplace, Kentucky Mountain Health, LLC, about potential Medicaid fraud. [R. 37, p. 1]. Therefore, as Magistrate Judge Atkins properly determined, the authorization to search Kentucky Mountain Health's general business records was not overbroad in light of the underlying, complex business fraud scheme under investigation. *See id.* at 8 (citing *Abboud*, 438 F.3d at 575). In her objection, Meadows does not address this aspect of Magistrate Judge Atkins's analysis or the *Abboud* case and other authorities on which Magistrate Judge Atkins relies.

To bolster her argument that "the warrant sought very broad categories of items, without specific reference to why probable cause existed to search and/or seize those items,"[1] Meadows

[1] The Court notes that Meadows does not challenge probable cause of the warrant generally. Instead, she argues that the warrant needed to explain why probable cause existed for certain specific items. *See* [R. 47, p. 5]. Accordingly,

also attempts to compare the current case with *United States v. SDI Future Health*. [R. 47, p. 5]. In *SDI Future Health*, the Ninth Circuit held, in part, that a search warrant permitting the seizure of "documents relating to bank records [and] . . . personnel and payroll records" from a business accused of Medicare fraud and tax fraud was overly broad. 568 F.3d 684, 705 (9th Cir. 2009). Meadows alleges that the same is true here. [R. 47, pp. 5–6].

However, Meadows's comparison to *SDI Future Health* is unpersuasive. First, the Court notes that the *SDI Future Health* case is from the Ninth Circuit and is not binding on this Court. Additionally, Meadows's blanket assertion of the holding in *SDI Future Health* ignores the reasoning behind that holding. The Ninth Circuit concluded that the portion of the warrant that authorized the seizure of any documents related to bank and checking accounts was overbroad because "companies keep documents relating to the bank and checking accounts or other financial information of most of their employees," meaning that "the warrant provided the search team with discretion to seize records wholly unrelated to the finances of SDI or Kaplan." *SDI Future Health*, 568 F.3d at 705. That part of the warrant failed to limit the seizure of employee bank and financial records to only those that could bear upon the crime being investigated, even though it could have been more specific on that point. *See id.*

In contrast, the Ninth Circuit also held in *SDI Future Health* that the portion of the warrant authorizing the seizure of all accounting records at SDI was not overbroad. *Id.* The court reasoned that, unlike bank and checking account records, "the only accounting records companies typically keep are those of their business dealings; they do not keep accounting records of their employees' personal finances." *Id.* Although the court acknowledged that it did not believe that SDI was committing Medicare fraud every time it worked with physicians, it nonetheless concluded that

---

the Court need not address in this opinion whether probable cause supported the warrant as a whole. Instead, the Court confines its analysis to the specific probable cause arguments Meadows raises.

because SDI's "entire business" involved the medical services at the center of the alleged fraud, "all of [SDI's] accounting records could potentially reveal evidence of the alleged fraud." *Id.*

Unlike the warrant's authorization to seize all banking records in *SDI Future Health*, which authorized the seizure of records unrelated to the crime being investigated (all employee bank and financial records), the warrant here connects the records sought to the alleged criminal conduct. For example, the warrant authorizes the seizure of banking records and financial documents "which show[] payments being made to or from individuals who are employed or contracted through Kentucky Mountain Health, LLC." [R. 28-1, p. 1 (Search Warrant)]. Many of the other items in the warrant are similarly tailored to the crime under investigation, such as the authorization to seize "any and all documents which show kickbacks have been given or received between Brandy Meadows/Kentucky Mountain Health and any other party," "patient files of Medicaid patients," and "documentation regarding coding, records, documents, papers, memoranda, notes, and correspondences that tend to show knowledge and/or intent to submit fraudulent claims to the Kentucky Medical Assistance Program (Medicaid)." *Id.*

And the warrant's list of categories like "[r]ecord books or other account recording methods, which indicates patients receiving a credit charge account," "all original billing records," and "cash and receipt books," [R. 28-1, p. 1], is not overly broad because Kentucky Mountain Health's "entire business," *SDI Future Health*, 568 F.3d at 705, was to provide patient services like those at center of the alleged fraud. *See* [R. 37, pp. 1–2]. Indeed, a key part of the alleged fraud is that Kentucky Mountain Health charged patients cash for Medicaid-covered services. [R. 30, p. 4]. Thus, all of Kentucky Mountain Health's billing and accounting records could potentially reveal evidence of the alleged fraud, just like the accounting records in *SDI Future Health*. *See SDI Future Health*, 568 F.3d at 705.

Ultimately, *SDI Future Health* aligns with Sixth Circuit authority on the matter. *See United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (explaining that in some circumstances a "warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime"); *United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006) (holding that a broad warrant was justified because the defendant was implicated in a broad scheme); *United States v. Asker*, 676 F. App'x 447, 462 (6th Cir. 2017) (holding that because the three general categories of business records mentioned by the warrant were "all related to the government's suspicion that Happy's Pizza was involved in a scheme to launder narcotics-trafficking proceeds," the warrant was not an impermissible "all records" search and met the particularity requirement). Accordingly, if anything, *SDI Future Health* supports the government's position.

Finally, the warrant's authorization of the search of computers and associated electronic items, [R. 28-1, pp. 1–2], is not overbroad, though Meadows contends otherwise. [R. 47, pp. 5–6]. The Sixth Circuit has "repeatedly upheld warrants authorizing the seizure of computers for subsequent off-site forensic search when 'the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack.'" *United States v. Fordham*, 183 F.4th 442, 461 (6th Cir. 2026) (quoting *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) (citation omitted) (collecting cases).

Indeed, given that the "unique nature of electronic-storage mediums makes it difficult to know ex ante where or in what format relevant evidence may be stored," *id.*, "a computer search may be as extensive as is reasonably required to locate the items described in the warrant based on probable cause." *U.S. v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (quoting *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009)). "As is the case with paper documents, on occasion

in the course of a reasonable search, investigating officers may examine, 'at least cursorily,' some 'innocuous documents . . . in order to determine whether they are, in fact, among those papers authorized to be seized.'" *Id.* at 539 (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976)); *see also United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009) (explaining that a search warrant for a computer for evidence of the crime alleged was not overbroad and that "[a] generalized seizure of business documents may be justified if it is demonstrated that the government could not reasonably segregate . . . documents on the basis of whether or not they were likely to evidence criminal activity (citation and internal quotation marks omitted)).

Here, the warrant specifically states that it authorizes the seizure of electronic records with "indicia of use, ownership, possession, or control of such records relating to the treatment of patients, billing for services rendered, Cash payment for treatment, claims and any other services claimed to be provided by any agent, associate, [or] employee of Kentucky Mountain Health, LLC" that should be seized. *Id.* at 2. The warrant provides that an expert forensic examiner will take the electronic evidence to a secure location and use a forensic imaging technique to search the electronic devices, making "every effort to review and copy only programs, directories, files and materials that are of the offenses described herein." *Id.* Thus, the search of computers and other electronic evidence was directly tailored to locate files related to the fraud scheme.

Additionally, the affidavit, which is explicitly incorporated by the search warrant,[2] details Kentucky Mountain Health's use of electronic charting methods and employee communications via email. [R. 30, pp. 5–7]. There is at least a "fair probability," given Kentucky Mountain Health's alleged use of electronic devices for business purposes, "that contraband or evidence of a crime"

---

[2] Affidavits incorporated by the search warrant are considered when assessing the sufficiency of the warrant. *U.S. v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir. 1991) ("A search warrant may be construed with reference to a supporting affidavit if the affidavit accompanies the warrant and the warrant incorporates the affidavit by reference." (citing *United States v. Maxwell*, 920 F.2d 1038, 1031, 1032 (D.C. Cir. 1990))).

will be found on the electronic devices at Kentucky Mountain Health. *United States v. Schultz*, 13 F.3d 1093, 1097 (6th Cir. 1994). This creates a "sufficient chance of finding some needles in the computer haystack," *Evers*, 669 F.3d at 652, so the electronic evidence portion of the warrant passes constitutional muster.

Moreover, Meadows does not challenge Magistrate Judge Atkins's conclusion that, even if the search warrant was found to be overbroad, "suppression of the evidence is not warranted because the warrant was relied upon in good faith," and thus falls within the *Leon*[3] good faith exception. [R. 37, p. 8]; *see also* [R. 47]; [R. 48, p. 4 ("The Defendant has not objected to the R&R's [*Leon* good faith] finding that the exclusionary rule would not apply even if the search warrant she challenges were defective.")]. The Court has reviewed that portion of Magistrate Judge Atkins's analysis and agrees with Magistrate Judge Atkins's reasoning that the *Leon* good faith exception would apply. As such, even if the search warrant was overly broad, suppression of the evidence is not warranted because the good-faith exception applies. [R. 37, pp. 8–10].

**B. The prescription token was not outside the scope of the warrant.**

In her third objection, Meadows rehashes her argument from her motion to suppress. [R. 47, pp. 6–8]. As established, the Court is not required to "review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509). Regardless, to ensure a complete record, the Court will proceed with analyzing the merits of Meadows's argument.

Meadows argues that a prescription token falls beyond the scope of the warrant, as the warrant only pertains to "financial and billing issues." [R. 47, pp. 6–7]. However, the warrant explicitly allows the seizure of "records . . . relating to the treatment of patients required by law or

[3] The *Leon* good faith exception stems from the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984).

contract to be kept or maintained . . . computer system(s); all related computer peripherals; [and] all electronic storage devices." [R. 28-1, pp. 1–2]. The prescription token relates to the "treatment of patients," as it is an "electronic device that is a form of two-factor authentication for a DEA licensed practitioner to use when issuing a prescription for controlled substances." [R. 37, pp. 4 n. 1, 11]. Thus, Magistrate Judge Atkins correctly determined the prescription token fell within the scope of items described by the warrant. [R. 37, p. 11].

Moreover, even if the prescription token was not specifically described in the warrant, the Sixth Circuit has provided that an item may still be seized if it is "reasonably related to the offense which formed the basis for the search warrant." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003). Here, the basis for the search warrant was an investigation into the alleged defrauding of Medicaid patients to pay cash for treatment that they would be covered for. [R. 37, p. 1]. Thus, the prescription token is reasonably related to the investigation, as the prescriptions issued by Kentucky Mountain Health are directly tied to patient treatment.

Therefore, the prescription token fell within the scope of the warrant, and the request to suppress the prescription token was rightfully denied by the magistrate judge.

### C. Magistrate Judge Atkins correctly determined that statements obtained from Meadows were voluntary.

Meadows argues in her fourth objection that the statements she made to law enforcement were involuntary. [R. 47, pp. 8–9]. Having examined this objection and compared it to Meadows's motion to suppress, the Court first notes that several portions of the fourth objection appear to be copied directly from Meadows's motion. *Compare* [R. 47, pp. 8–9 (Objection 4)], *with* [R. 28, pp. 6–7 (Motion to Suppress Involuntariness Argument)]. Magistrate Judge Atkins considered and rejected Meadows's arguments about the circumstances of the interview, including the length of the interview, whether the questions were outside the scope of the search warrant, where the

interview took place and whether Meadows had access to outside individuals, and the number of officers present during the execution of the search warrant. [R. 37, pp. 11–14]. Meadows's fourth objection does not attempt to explain how Magistrate Judge Atkins erred in his understanding or application of the facts or the law and simply repeats her arguments on these points. The Court need not review these rehashed arguments that Magistrate Judge Atkins has already thoughtfully addressed. *See Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509); *Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2. Objections that seek to take a "second bite at the apple"—like the copy-and-pasted portions of Meadows's fourth objection—"undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. S 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013). Regardless, to ensure a complete record, the Court has reviewed the record and the magistrate judge's ruling that there is no evidence of coercion to establish that Meadows's statements were involuntary and finds the reasoning to be sound.

Moreover, the portions of Meadows's fourth objection that are not merely duplicate arguments from her motion to suppress also fail. To begin, Meadows improperly relies on *United States v. Greene*. [R. 47, p. 8]. *Greene* is not applicable in this case, as the quote cited by Meadows states that the totality of the circumstances is relevant for determining the sufficiency "of an affidavit and search warrant," not statements made to the police. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001).

Nevertheless, it is also true that "[c]ourts must consider the totality of the circumstances surrounding alleged coercion." *United States v. Jacobs*, 63 F.4th 1055, 1060 (6th Cir. 2023). On this point, Meadows argues that her "specific mental state and the impact of the actions of law enforcement upon her throughout the day . . . are relevant to the totality of the circumstances

analysis." [R. 47, p. 8]. While it is true that Meadows's subjective mental state bears on the analysis of whether her statements were voluntary, Meadows's argument on this point does not capture the entirety of the relevant test for voluntariness in the Sixth Circuit.

As Magistrate Judge Atkins correctly identified, there are three factors that determine whether a confession was involuntary: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statements." [R. 37, pp. 11–12 (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999))]; *see also Jacobs*, 63 F.4th at 1058. The first factor is a threshold inquiry; courts need not proceed to the second and third *Mahan* factors unless the actions of law enforcement were objectively coercive. *U.S. v. Binford*, 818 F.3d 261, 272 (6th Cir. 2016) ("In summary, we hold that Kinal's promise of leniency was not objectively coercive, and thus, Binford made his incriminating statements voluntarily. As such, we need not discuss the second and third parts of the *Mahan* test." (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (explaining that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"))).

Here, Meadows's "specific mental state and the impact of the actions of law enforcement upon her throughout the day," [R. 47, p. 8], would be considered under the second *Mahan* prong, which asks whether the coercive police conduct in question "was sufficient to overbear the defendant's will and was in fact the cause of the defendant's will being overborne." *Irons*, 646 F. Supp. 2d at 971. However, Magistrate Judge Atkins has already properly determined that law enforcement's conduct was not objectively coercive, and thus, that Meadows's statements were voluntary. [R. 37, pp. 11–14]. In so holding, Magistrate Judge Atkins noted that: (1) Meadows was read her Miranda rights at the beginning of the interview and stated that she understood those rights

before waiving them, which the Sixth Circuit has held makes a confession more likely to be voluntary, *id*. at 12 (quoting *McCalvin v. Yukins*, 444 F.3d 713, 721 (6th Cir. 2006) and *Michael v. Butts*, 59 F.4th 219, 228 (6th Cir. 2022)); (2) the interview only lasted 1 hour, which the Sixth Circuit does not consider indicative of coercion, *id.* at 12–13 (quoting *United States v. Stokes*, 631 F.3d 802, 809 (6th Cir. 2011)); (3) the scope of questioning in the interview did not render Meadows's statements involuntary because her knowledge (or lack thereof) of all of the possible subjects of questioning in advance does not bear on whether the statements were voluntary, *id.* at 13 (citing *Colorado v. Spring*, 479 U.S. 564, 577 (1987))]; (4) the interview took place at Meadows's place of employment, which is not considered a hostile environment, *id.* (citing *United States v. Wombold*, No. 3:16-cr-20-CLC-HBG, 2017 WL 2929438, at *20 (E.D. Tenn. June 1, 2017)), the recording established that she was free to leave because the officers stated that she was not under arrest, *id.*, and Meadows was not deprived of outside individuals because she was able to answer a phone call, *id.* at 14; and (5) only two officers interviewed Meadows, and regardless the presence of eleven officers at the execution of the warrant was not enough to establish coercion, *id.* (citing *Carder v. Maxwell*, 289 F. Supp. 1056, 1060 (E.D. Ohio 1969)). Meadows does not dispute any of the facts or law on which Magistrate Judge Atkins based his decision.

Moreover, Meadows fails to point to any additional evidence (nor suggest any exists) of coercive behavior. Indeed, where an officer speaks in a conversational tone, does not brandish weapons or handcuffs, and does not threaten or use violence, the Sixth Circuit has held that such conduct "closely resembles conduct we've previously held is not coercive." *Jacobs*, 63 F.4th at 1058–59. The Sixth Circuit has also described a two-hour interview—which is double the length of Meadows's interview—to be "relatively short," a factor weighing against a finding of coercion. *Id.* at 1059. Accordingly, Meadows has not established the prerequisite necessary to proceed to

the second *Mahan* prong, and it is not necessary for the Court to consider Meadows's subjective mental state. *See Binford*, 818 F.3d at 272.

In sum, Magistrate Judge Atkins correctly concluded that the officers' actions in this case were not coercive and that accordingly, Meadows's statements were voluntary. Meadows's fleeting reference to her specific mental state and the totality of the circumstances does not alter that conclusion.

**D. Magistrate Judge Atkins correctly determined that an evidentiary hearing was not necessary in this case.**

Meadows makes a preliminary objection to Magistrate Judge Atkins's decision not to hold an evidentiary hearing. An evidentiary hearing is only required if the motion raises issues that are "'sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (quoting *United States v. Downs*, No, 96-3862, 1998 WL 130786, at *3 (6th Cir. Jan 19, 1999)).

Here, Meadows failed to contest any specific issues of fact. Meadows initially justifies the need for an evidentiary hearing by "incorporat[ing] all arguments" in her objections to the Report and Recommendation. [R. 47, p. 4]. Ostensibly, this includes her arguments that the search warrant was overly broad, *id.*, that items seized were outside the scope of the warrant, *id.* at 5, and whether her "specific mental state" affects whether "the statements made to law enforcement were voluntary." *Id.* at 4. However, determinations of whether "facts were insufficient to support probable cause" or whether a "warrant was overbroad" are examples of legal challenges, not factual challenges. *Abboud*, 438 F.3d at 577. And while Meadows suggests that an evidentiary hearing is necessary to explore her mental state at the time of the interview, which in turn affects

her voluntariness argument, deciding voluntariness on this record does not require an evidentiary hearing. *See supra* Part III.C.

In this case, Meadows's voluntariness challenge can be resolved at the first prong of the *Mahan* test. Magistrate Judge Atkins correctly found that law enforcement's actions were not objectively coercive, *see supra* Part III.C, and an evidentiary hearing was not required for this determination. As Magistrate Judge Atkins explained, the *undisputed facts* on the record about the circumstances surrounding Meadows's statements fall short of establishing objective coercion. *See id.* Meadows does not contest the facts related to the circumstances of the interview or indicate that there are any additional facts that demonstrate objective coercion. *See* [R. 28, pp. 6–7]; [R. 47, pp. 8–9]. Accordingly, whether the undisputed facts about the interview demonstrate objective coercion under the first *Mahan* prong is not a factual dispute that requires an evidentiary hearing; the magistrate judge needed only to apply those facts to the first prong of the *Mahan* test. *See United States v. Jacobs*, 63 F.4th 1055, 1058 (6th Cir. 2023) (explaining that the *Mahan* coercion test determines "the legal significance of the facts"); *Miller v. Fenton*, 474 U.S. 104, 110, 116 (1985) (noting that although the voluntariness inquiry has a "hybrid" quality of both legal and fact questions, the ultimate determination of voluntariness is a legal question); *Jackson v. Denno*, 378 U.S. 368, 390 (1964) (distinguishing between situations with disputed facts about the circumstances of an interview that warrant an evidentiary hearing to resolve those conflicts and situations "where the facts concerning the circumstances surrounding the confession are undisputed and the task is only to judge the voluntariness of the confession based on the clearly established facts").

Moreover, an evidentiary hearing was not required to probe into Meadows's subjective mental state during the interview. Meadows's subjective mental state does not bear on whether

police actions during the interview were objectively coercive. *See supra* Part III.C; *see also U.S. v. Binford*, No. 13-20271, 2013 WL 5998698, at *6 (E.D. Mich. Nov. 12, 2013) ("Regardless of a defendant's state of mind, a confession is voluntary absent police coercion."). Because Magistrate Judge Atkins properly determined that there was no evidence of coercion, he was not required to proceed to the second factor of *Mahan* analysis or examine Meadows's subjective mental state. *See id.* The question of voluntariness in this case "reduces to the first factor," *U.S. v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003), and does not require an evidentiary hearing.

Meadows further contends, in a single sentence, that under *United States v. Accardo*, the determination of whether a *Leon* good faith exception applies necessitates an evidentiary hearing. [R. 47, p. 4]. In *Accardo*, the district court conducted an evidentiary hearing on the defendant's suppression motion but did not consider whether a good-faith exception applied, and the Eleventh Circuit ultimately remanded the matter so the district court could conduct such a hearing and consider the applicability of a good-faith exception. 749 F.2d 1477, 1481 (11th Cir. 1985). In doing so, the Eleventh Circuit noted that certain relevant cases, like *Leon*, had been decided after the district court conducted its suppression hearing. *Id.* at 1481. Here, in contrast, the magistrate judge not only originally applied the *Leon* good faith exception but also properly considered the facts, or lack thereof, alleged by Meadows that would establish a Fourth Amendment violation by the officers. [R. 37, pp. 8–10]. Meadows does not point to any other facts (nor even argue that any other facts exist) that would affect the Court's good-faith-exception analysis.

Moreover, Meadows does not otherwise challenge the magistrate judge's analysis of the applicability of the good-faith exception. As discussed above, *supra* Part III.A, the Court has reviewed that analysis and finds it to be sound. Therefore, the good-faith exception analysis does

not require an evidentiary hearing, and the magistrate judge correctly found that no contested issues of fact exist in the present case that would require an evidentiary hearing. *See* [R. 37, p. 14].

## IV. CONCLUSION

In conclusion, the Court will overrule each of Meadows's objections. It will therefore adopt the Report and Recommendation and deny the Motion to Suppress. Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation, [**R. 37**], is **ADOPTED** as the opinion of this Court.
2. Defendant's Objections, [**R. 47**], are **OVERRULED**.
3. Defendant's Motion to Suppress, [**R. 28**], is **DENIED.**

This the 26th day of October, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY